Patton *v.* Patton (et al., Appellant).
Derr *v.* Patton (et.al., Appellant).

Argued January 13, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*D. D. Dolbin,* with him *Joseph W. P. Burke,* for appellant.

*Leon H. Kline,* with him *Isadore E. Krasno,* for appellee.

OPINION BY MR. JUSTICE JONES, March 17, 1964:

John D. Patton (Patton), is the *named insured* in an automobile liability policy issued by State Farm Mutual Automobile Company (State Farm), the garnishee in both these proceedings. Patton's automobile, then being operated by George Derr (Derr), with Patton's permission, was involved in a collision with another motor vehicle and at the time, Patton's wife, Esther Patton, and Derr's wife, Mary Derr, passengers in the Patton automobile, sustained personal injuries.

Esther Patton and Mary Derr instituted separate trespass actions in the Court of Common Pleas of Schuylkill County against the operator of the other motor vehicle and, in each action, Patton and Derr were joined as additional defendants.[1]  At trial, the

---

[1] During the pendency of the actions, Derr and Mary Derr died. Reference in this opinion will be made to Derr and Mary Derr, even though the interests of the former as additional defendant and the

jury returned verdicts in each action against Patton and Derr and judgments in favor of Esther Patton and Mary Derr, respectively, were entered.

To enforce her judgment against Derr, Esther Patton issued an attachment execution against State Farm and, to enforce her judgment against Patton, Mary Derr issued an attachment execution against State Farm.[2] To the judgment holders' interrogatories State Farm filed answers; the judgment holders then demurred and moved for judgments on the pleadings. The court below sustained the demurrers and entered judgments on the pleadings against State Farm. From the entry of such judgments these two appeals have been taken.

One appeal (No. 66 January Term 1964) questions the right of the *named insured's* wife—a "member of the family of the [named] insured residing in the same household as the [named] insured"—, to recover damages for bodily injury, under the provisions of the insurance policy, from the *additional insured*. The other appeal (No. 67 January Term 1964) questions the right of the *additional insured's* wife—a "member of the family of the [additional] insured residing in the same household as the [additional] insured"—to recover damages for bodily injury, under the provisions of the insurance policy, from the *named insured*.

The relevant policy provisions are:

"I. Coverages.

"Coverages A and B—(A) Bodily Injury Liability and (B) Property Damage Liability. (1) To pay all damages which the insured shall become legally obligated to pay because of (A) bodily injury sustained by

---

latter as a plaintiff are now represented of record by the personal representative of each respective estate.

[2] It would *appear* Esther Patton disclaims any interest to enforce her judgment against Patton, and Mary Derr disclaims any interest to enforce her judgment against Derr.

other persons . . . caused by accident arising out of the ownership, maintenance or use . . . of the automobile.

"II. Definition of Insured, etc. (a) Insured— with respect to the insurance afforded under coverages A and B, the unqualified word 'insured' includes the named insured and, . . . his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use is by the named insured or such spouse or with the permission of either. . . ."

"Exclusions

"This policy does not apply under . . . (e) coverage A, to any obligation . . . for bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

Appellee's contention, and the rationale of the court below, is that the words "the insured" in the exclusionary clause, supra, must be construed to refer only to the particular insured "from whom a recovery is sought". That is to say: (1) as to Esther Patton's claim, she not being a member of the family of, and residing in the same household as, Derr against whom she seeks to recover damages, her claim falls within the policy coverage A; (2) as to Mary Derr's claim, she not being a member of the family of, and residing in the same household as, Patton against whom she sought to recover damages, her claims falls within the policy coverage A.

### Esther Patton's Claim

On two occasions in recent years this Court has considered the effect of similar exclusionary clauses in automobile liability policies: *Puller v. Puller*, 380 Pa. 219, 110 A. 2d 175; *Great American Insurance Co. v. State Farm Mutual Automobile Ins. Co.*, 412 Pa. 538,

194 A. 2d 903. In both cases we construed the impact of such clauses upon the policy coverage of co-resident members of the family of the *named insured*. In *Puller*, we held that such class was excluded from policy coverage where members of such class sought to recover damages for bodily injuries, directly or indirectly by way of contribution to a third person, against the *named insured*. In *Great American*, we held that such class was excluded from policy coverage where members of such class sought to recover damages for bodily injury against an *additional insured*. The rationale of both decisions is that, no matter against which insured recovery is sought, recovery by co-resident members of the *named insured's* family is excluded from policy coverage.

Appellee's attack on *Great American* is two-fold: (a) that *Great American* does not control the instant situation because the policy language therein differs from the policy language in this case; (b) that, if *Great American* does control, it should be reconsidered and overruled.

Conceding that the exclusionary clause herein and that in *Great American* are "substantially the same", appellee argues that the language of the "omnibus clause" in this case differs from that in *Great American*. We have examined both "omnibus clauses" and are satisfied that any distinction in language is a distinction without a legally significant difference and that, in this respect, *Great American* is indistinguishable from the case at bar.

In the light of appellee's request that *Great American* be reconsidered, we have re-evaluated that ruling and we are convinced that *Great American* should stand. The thrust of *Great American* is that the exclusionary clause of the policy excludes from policy coverage *any* claims for damages for bodily injuries of co-resident members of the family of the *named*

*insured.* No matter upon whom—the named insured, the spouse of the named insured or an additional insured—may rest a legal obligation to pay damages for bodily injuries to co-resident members of the family of the *named insured,* such damage claims are not covered by the policy.

In the case at bar, there is a fact which does not appear in *Great American.* Esther Patton, the instant claimant, as the spouse of the named insured, is clearly an "insured" under the "omnibus clause" of this policy and to permit her to recover under the provisions of this policy against Derr, the additional insured, would extend policy coverage to damage claims of an "insured" vis-a-vis an "insured", a result completely at variance with the obvious intent and purpose of the parties to this insurance contract. Not only as a co-resident member of the *named insured's* family but as an "insured" under the policy, the claim of Esther Patton against Derr, the additional insured, is not within the policy coverage.

In entering judgment in favor of Esther Patton and against Derr, the court below erred and such judgment must be reversed.

### Mary Derr's Claim

This claim presents an aspect of this policy different than that in Esther Patton's claim. Mary Derr claims that this policy grants coverage to the named insured, the person who, when purchasing this policy, was interested primarily in protecting himself from damage claims, against claims of co-resident members of the *additional insured's* own family, i.e., the family of the person to whom was extended coverage in the permissive use of the insured automobile.

In considering this claim and construing the language of the exclusionary clause, certain well settled principles must be kept in mind: (a) "An omnibus

clause creates liability insurance not only for the benefit of the named insured, but also for the benefit of those who come under the clause and meet its requirements; or, in other words, it does not afford additional protection to the owner, but extends protection to third persons operating the vehicle with the insured's consent." (Appleman, Insurance Law and Practice, Vol. 7, §4354, p. 243) ; (b) An insurance "policy, . . ., must be read in its entirety and the intent gathered from a consideration of the entire instrument." *(Smith v. Cassida,* 403 Pa. 404, 408, 169 A. 2d 539) ; (c) if the language of the policy is uncertain or ambiguous, then, and only then, must the policy be construed most strongly against the insurer *(Ehrlich v. U. S. Fidelity & Guaranty Co.,* 356 Pa. 417, 423, 51 A. 2d 794) ; (d) if language of the policy is certain and unambiguous, a construction cannot be adopted which conflicts with the plain meaning of such language *(Topkis v. Rosenweig,* 333 Pa. 529, 532, 5 A. 2d 100), unless the construction be "manifestly absurd, nor effectually prevent a recovery under all circumstances" *(Janney v. Scranton Life Ins. Co.,* 315 Pa. 200, 203, 173 A. 819).

There can be no doubt that, as defined in the "omnibus clause", the word "insured" includes not only the named insured and his spouse but also *any* person using permissively the insured automobile. Under such definition, Patton, Esther Patton and Derr are within the defined word "insured", and it is clear that the insurer agreed under the "Coverages" and "omnibus" clauses in the policy to pay all damages for bodily injuries for which any of such "insured" should "become legally obligated to pay". In *Wenig v. Glens Falls Indemnity Co.,* 294 N.Y. 195, 201, 61 N.E. 2d 442, 445, Chief Judge LEHMAN aptly said of an "omnibus clause": "The liability of the insurance company upon its promise to insure the 'named assured' is neither extended nor limited by the fact that

under the terms of the policy it assumed an obligation also to insure the 'additional assured' against liability for damages for which he might become liable."

In considering the definition of "insured" in the "omnibus clause" we must bear in mind both the purpose and the language of that clause. The purpose of the "omnibus clause" was the *extension* of coverage, i.e., extension of protection against legal liability for damages for bodily injury, to a person or persons, other than the named insured and spouse, i.e., to a permissive user or users of the insured automobile. The language in the "omnibus clause" is highly significant; it does not constitute a blanket definition of "insured" for all purposes or as the word "insured" might appear elsewhere in other portions of the policy for the language distinctly and clearly states that *"with respect to the insurance afforded under coverages A and B,* [Bodily Injury Liability and Property Damage Liability] the unqualified word 'insured' includes", etc. and to such the definition is limited and restricted. What the purchaser and seller of this policy clearly intended was that, through the medium of the "omnibus clause", the person or persons to be protected were to be identified but not the person or persons against whose claims they were to be protected. Both the language and the purpose of the "omnibus clause" reveal that the word "insured" was defined for use only for a qualified and restricted purpose, to wit, the identification of the parties to whom protection under the policy was granted.

On the other hand, the purpose of the exclusionary clause was the denial of coverage under the policy to damage claims on the part of members of a certain restricted class, i.e., the members of the family of the *named insured* and the *named insured's* spouse. Unlike the "omnibus clause", the exclusionary clause delineated a certain class of individuals for the payment

of whose damages claims for bodily injury no protection under the policy would be allowed.

To deny the claim of Mary Derr against Patton, the named insured, would result in a holding that Patton, who sought and bought protection and coverage under this policy against all claims of the public generally save only for claims of his own family and employees, is personally liable for the payment of a judgment obtained against him because the judgment holder is the wife of an additional insured. To reach that result perverts the basic purpose of the "omnibus clause", i.e., the *extension* of coverage to a person or persons other than the named insured and spouse, into a *denial* of coverage to the named insured by introducing into a clause intended to *exclude from coverage* a definition of "insured" from a clause intended to *extend coverage*. Such an introduction ignores the plain language and purpose of each clause and results in a deprivation of an essential protection for which the named insured bargained and paid.

The definition of "insured" under the "omnibus clause" must be confined, as its language so confines it, to a definition of the persons who are to receive policy coverage, while the definition of "the insured" under the exclusionary clause is to be confined to an identification of the class of persons from whom no damage claims will be countenanced under the policy coverage. Such a construction preserves the true intent on the part of the insurer and the person purchasing such insurance and preserves the language and the separate purposes of both the "omnibus clause" and the exclusionary clause. Nowhere in this policy is language from which it can be inferred that protection to a named insured is withdrawn against liability to co-resident members of the family of the additional insured. In our view, this construction of the instant policy affords and permits a more sensible and just

576

solution than had we engaged in the semantical merry-go-round of the sort necessary to afford no coverage to Patton.

Judgment in No. 66 January Term 1964 reversed; judgment in No. 67 January Term 1964 affirmed.

Mr. Chief Justice BELL dissents and would reverse judgment in No. 67, January Term, 1964.